United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ANTHONY BANTA, et al., | No. 13-cv-342 CRB |
| Plaintiffs, | **ORDER DENYING MOTION FOR NEW TRIAL** |
| v. | |
| WALNUT CREEK POLICE OFFICERS, | |
| Defendants. | |

On December 26, 2012, Walnut Creek police officers responded to a panicked 9-1-1 call reporting that Decedent Anthony Banta, armed with a knife, had attacked his roommate and his roommate's girlfriend. After a confrontation, the officers fire two volleys of shots, killing Mr. Banta. On summary judgment, the Court held that the first volley was not excessive force under the Fourth Amendment. See SJ Order (dkt. 77) at 1. At trial, a unanimous jury found that the second volley was not excessive force either. See Verdict (dkt. 137). Plaintiffs now move for a new trial. See Mot. (dkt. 156).

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Under Ninth Circuit law, the Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Molkski v. M.J. Cable., Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.3 (9th Cir. 2000). The Court weighs the evidence as the Court saw it. Id.

## II. DISCUSSION

Plaintiffs complain of several supposedly egregious errors that entitle them to a new trial, namely that the Court improperly (1) limited the scope of Dr. Silvia Comparini's testimony, (2) gave the jury a misleading verdict form, (3) failed to give the jury a knife-specific instruction on excessive force, (4) allowed the officers but not Mr. Banta to be "personalized" at trial, and (5) admitted "inflammatory" 9-1-1 tapes. See Not. of Mot. (dkt. 156) at 1. There is no merit to any of this.

### A. Scope of Dr. Comparini's Expert Testimony

Plaintiffs first argue that the Court should not have limited Dr. Comparini's testimony to opinions in her initial expert report, even though that was required by the Court's standing order. See Mot. at 2-6; Standing Order re: Civil Jury Cases (Revised Sept. 6, 2013) at 6-7. Courts "routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases." Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1060 (9th Cir. 2004). Parties "must understand that they will pay a price for failure to comply" with those deadlines. Id. So, here, standing by the standing order was not error.

In any event, Plaintiffs cannot show prejudice. Dr. Comparini testified at length about what Mr. Banta could and could not have done given his injuries, see Trial Tr. 9/16/16 (dkt. 145) at 16-41, as well as when and where he must have been shot, see, e.g., id. at 79. This included opining that he could not have had a knife at the bottom of the stairs. See, e.g., id. at 16-17. Evidently the jury didn't buy it. That comes as no surprise, since the knife blade, handle, and other fragments were found at the bottom of the stairs – something that Dr. Comparini could explain only by accusing the officers of planting evidence. See Tr. Ex. 6-7; Trial Tr. 9/16/16 at 60. Allowing testimony beyond the scope of Dr. Comparini's initial report would have done little, if anything, to make that account more believable.

### B. Verdict Form

Plaintiffs also cry foul about the verdict form, see Mot. at 7-8, but to no avail. A district court has "complete discretion to determine the form of a special verdict as long as it was an accurate reflection of the law." United States v. Devereaux, 242 F. App'x 424, 425

(9th Cir. 2007). That was the case here. And though the verdict form asked the jury if they found that Mr. Banta "was still moving and was an immediate threat" at the bottom of the stairs, Jury Verdict (dkt. 137) at 1, nothing about that question threatened to "lead the jury to a false conclusion," Mot. at 7. If someone asks whether a person "was still singing and was an annoyance," no one assumes that singing must always be an annoyance. But such is the logic of Plaintiffs' argument. See Mot. at 7.

### C. Jury Instructions

Plaintiffs insist that the jury needed to hear a knife-specific instruction on excessive force.[1] Mot. at 8-11. Not so. The jury received the Ninth Circuit's model jury instruction on excessive force. Compare Ninth Circuit Model Jury Instruction (Civil) 9.25 with Jury Instructions (dkt. 139) at 12-13. That is enough. See, e.g., Jackson v. City of Fresno, 237 F. App'x 144, 146 (9th Cir. 2007) (rejecting argument that firearm-specific instruction on excessive force was necessary).

### D. "Personalizing" of Defendant Officers

Plaintiffs next argue – without citation – that the Court subjected them to "unfair treatment" by allowing the officers to be "personalized" over the "40 hours" they spent in court but not allowing the same for Mr. Banta. See Mot. at 11-12. Putting aside that Mr. Banta's loved ones attended much of the trial, a new one need not be held just because the jury never saw a picture of him alive. Plaintiffs' argument to the contrary is without merit.

### E. Admission of 9-1-1 Calls

Finally, Plaintiffs maintain that the Court should not have admitted "flamboyant," "exaggerated," and "likely staged" 9-1-1 calls from two would-be victims of a stabbing. Mot. at 12. No. As an initial matter, Plaintiffs stipulated to the authenticity of the 9-1-1 tapes before trial. See Pretrial Conf. Statement (dkt. 102) at 6-7. There was no basis for questioning it then and there is no basis for questioning it now.

---

[1] Plaintiffs' also fault the Court for having "interrupted" their police practices expert while allowing Defendants' police practices expert "to expound on the law at length." Mot. at 12. Plaintiffs do not cite to the record and do not explain why the jury might forget to "take the law only from the Court" after being so instructed. See id. For those two reasons, the Court rejects the argument.

3

In any event, Plaintiffs argue that the panicked exchange was so unfairly prejudicial as to violate Federal Rule of Evidence 403, in part because the officers "never heard" these "exaggerated responses of marijuana smokers" to what was not "real danger or violence."[2] Mot. at 12. Again, no. Rule 403 requires prejudice to be "unfair." Fed. Rule Evid. 403. Plaintiffs do not (and cannot) point to anything unfair about admitting the 9-1-1 tapes, let alone anything so unfair that it substantially outweighed their probative value. The tapes corroborated the would-be victims' testimony about what was happening that night, as well as the officers' testimony about what they had been told was happening.[3] And though the tapes made powerfully clear that the officers had rushed to meet a very real danger, that is what probative evidence does. Cf. Vizcarra-Martinez, 66 F.3d 1006, 1013 (9th Cir. 1995) ("The jury cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the [case].").

### III.   CONCLUSION

At bottom, the weight of the evidence at trial cut decidedly in Defendants' favor. For that and the foregoing reasons, the Court DENIES Plaintiffs' motion for a new trial.

**IT IS SO ORDERED.**

Dated: December 13, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[2] As support, Plaintiffs cite one case that parrots the standards for excessive force claims under the Fourth Amendment and wrongful death claims brought under state law. See Mot. at 12 (citing Hayes v. Cnty. of San Diego, 57 Cal. 4th 622, 639 (Cal. 2013)). Nothing more.

[3] The tapes, therefore, were quite relevant.